Filed 7/27/26  P. v. Crenshaw CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E085734 |
| v. | (Super.Ct.No. VCR1910) |
| MICHAEL TERRY CRENSHAW, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher S. Pallone, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, James M. Toohey and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

1

In December 1983, Michael Terry Crenshaw pled guilty to the robbery, kidnapping to commit robbery, and first degree murder of Myrtle Dee Benham. In 2019, he filed a petition for resentencing under Penal Code former section 1170.95, which has since been renumbered as section 1172.6. (Unlabeled statutory citations are to the Penal Code.) The trial court issued an order to show cause, held an evidentiary hearing, and denied the petition, finding that even though Crenshaw was not the actual killer, he was a major participant and acted with reckless indifference to human life. (§ 189, subd. (e)(3).)

Crenshaw appeals from the order denying his petition. He argues that (1) the evidence was insufficient to establish that he was an aider and abettor of the underlying kidnapping and (2) even if he was an aider and abettor, there is insufficient evidence that he was a major participant in the underlying kidnapping. His arguments lack merit, and we therefore affirm.

BACKGROUND

In December 1983, Crenshaw pled guilty in San Bernardino County Superior Court to kidnapping to commit robbery (§ 209), robbery (§ 211), and first degree murder (§ 187). The trial court sentenced him to 25 years to life and ordered that his sentence run consecutively to the sentence that was imposed in Riverside County for a related murder.

In January 2019, Crenshaw filed a petition under former section 1170.95. The trial court issued an order to show cause in June 2021 and conducted an evidentiary hearing in

2

February 2025.  The evidence admitted at the hearing included a transcript of Crenshaw's October 2020 parole hearing.

The evidence showed that Crenshaw and Kevin Malone went to high school together.  One night, Malone went to Crenshaw's house and knocked on his door.  Malone asked Crenshaw if he wanted to go to California.  Malone showed Crenshaw "several firearms," and Crenshaw handled one of them.  Crenshaw agreed to go to California because he was in trouble with his father.  The next morning, Crenshaw walked around the corner from his house, and he saw police officers "at this taxicab car."  He asked the police officers what had happened, and they said that the cab driver had been killed.

After Crenshaw returned home, he told Malone that "they're looking for somebody who killed the taxicab driver."  Malone told Crenshaw, "[I]t wasn't me."  Crenshaw testified that he "figured it wasn't [Malone]," but he later testified that he knew that Malone had a "shady past" and that Malone had gone to prison for robbing a St. Louis judge.

Crenshaw and Malone drove to Independence, Missouri, in Crenshaw's car, and it broke down.  They then walked to Malone's aunt's house in Kansas City.  She was not home, so they next went to a Denny's restaurant.  Crenshaw called home to ask his family to send him money for a bus ticket home, but his father was not there.  Malone told Crenshaw to "wait right here," and Malone left and then came back in a blue car.  Crenshaw saw him from inside the restaurant, went outside, and got into the car with him.

3

Crenshaw asked whose car it was, and Malone said that it was his cousin's. Malone pointed one of his guns at Crenshaw and told him that "yes, he did" kill the cab driver, and if Crenshaw ever told anybody he would kill Crenshaw or have somebody in his family kill Crenshaw's little brother. Crenshaw stayed in the car. At his parole hearing, Crenshaw agreed that he should have gotten out of the car then, but he did not.

Malone and Crenshaw drove "for a long way," and Crenshaw fell asleep. Crenshaw subsequently "heard somebody in the trunk of [the] car kicking and stuff," and he asked Malone who it was. Malone said, "[D]on't worry about it" and drove "the car off the road." Malone got out, took "some guy out of the trunk," and walked "down the road." Crenshaw heard gunshots, and Malone ran back to the car. Crenshaw was "really scared," and Malone said, "you lucky, that could happen to you."

Malone and Crenshaw drove to Las Vegas. Crenshaw had "many opportunities" to jump out of the car, but he was scared that Malone would shoot him. They continued to Barstow, California, and they stopped at a gas station. Crenshaw asked Malone "what [he was] going to go [do]," and Malone told Crenshaw, "[J]ust stay in the car, don't, don't go nowhere." Malone went inside and returned with Benham. He put her in the "trunk or the back seat" and told Crenshaw that he was going to have sex with her.

Malone drove to a farm to "go to some shady area." He asked if Crenshaw "want[ed] a piece of this," and Crenshaw said, "no." Malone "walked to the door of [a shed]," and Crenshaw sat in the car. Crenshaw eventually walked to the shed and saw that Malone's pants were down, and he was "sodomizing her or whatever." Malone got

4

up, and he began "hitting the lady in the head with a pipe." Malone and Crenshaw got back into the car and went to a hotel for a few hours.

Malone next went to a car dealership and stole a car. He told Crenshaw to follow him in the other car and said that if Crenshaw tried to get away, Malone would have his cousin kill Crenshaw's little brother. Crenshaw followed him, and they subsequently stopped on the freeway. Malone set "the blue car on fire" and then "g[ot] in the other car that he stole." Crenshaw initially said that he could not recall whether both he and Malone set the car on fire, but later Crenshaw admitted that he helped set the car on fire.

Malone and Crenshaw drove past a car, and they stopped. Malone walked up to the car, and Crenshaw watched him through the rearview mirror. Minnie White was sitting in the driver's seat, and Malone pulled her out of the car by her clothes and hair. Malone put her in the trunk of their car and drove off. The record is not clear on exactly what happened next, but at some point Crenshaw heard a gunshot, and Malone ran back to the car with White's purse. Malone told Crenshaw that when they got to Malone's parents' home in Seaside, California, Crenshaw could go home.

Malone and Crenshaw were arrested in San Jose, California, following a police chase. During the chase, Crenshaw threw one of the firearms from the car window. Crenshaw lied to the police and told them that he was 17 years old. They put him in juvenile hall, and they subsequently sent him back to his home in Missouri. Crenshaw told his family what had happened, and they told him to tell the police everything.

5

At his parole hearing, Crenshaw testified that "[i]f it happened today, [he] would maybe try to stop it or call the police, you know." He said that one reason he associated with Malone was that "he always had stuff, and I tried to always have stuff, get money, I always kept a job, you know what I'm saying." Crenshaw admired Malone when Crenshaw was in high school.

Crenshaw testified that he was excited when he "first took off towards California," but he said that "[t]he excitement went away when [Malone] pulled the gun on [him] and told [him], yes, he'd done it." Crenshaw admitted that he had helped Malone by driving the car that Malone stole and by helping him set the car on fire.

The trial court denied Crenshaw's section 1172.6 petition, finding that he was a major participant who acted with reckless indifference to human life. The court found that Crenshaw's agreement to go with Malone to California "despite having suspicions and then later learning" from Malone that he had killed the cab driver was significant. The court noted that Crenshaw knew that Malone had a gun, and Malone had threatened him with that gun. The court acknowledged that Crenshaw claimed he was scared, but the court pointed out that the parole commissioner "made particular note of the fact that he fell asleep" during his drive with Malone. The court further found it significant that Crenshaw never tried to leave or to seek help, and he remained with Malone after seeing him beat Benham to death with a pipe.

6

I.     *Murder liability and Senate Bill No. 1437*

When Crenshaw was convicted, the first degree felony-murder rule provided that "'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission'" of certain enumerated felonies, "the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.'" (*People v. Strong* (2022) 13 Cal.5th 698, 704 (*Strong*).)  "Then, as now, a defendant convicted of first degree murder could be punished by a sentence of death or life without possibility of parole if the trier of fact found the murder's commission involved one of several statutorily defined special circumstances." (*Ibid.*)  One type of special circumstance, the felony-murder special circumstance, "applies to certain murders committed in the course of one of a dozen of the most serious felonies." (*Ibid.*; § 190.2, subd. (a)(17).)  That special circumstance "applies to some convicted murderers who neither killed nor intended to kill, namely, 'major participant[s]' in the underlying felony who acted 'with reckless indifference to human life.'" (*Strong*, at p. 704, quoting § 190.2, subd. (d).)

The Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) "'to more equitably sentence offenders in accordance with their involvement in homicides.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 448.)  Effective January 1, 2019, the new law eliminated the natural and probable consequences doctrine for murder and narrowed the definition of first degree felony murder.  (Stats. 2018, ch. 1015, § 1,

subd. (f); §§ 188, 189.)  As relevant here, Senate Bill 1437 narrowed first degree felony murder by adding section 189, subdivision (e), which provides that a "participant in the perpetration or attempted perpetration of a [qualifying felony] in which a death occurs is liable for murder" if the People prove that the "person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e)(3).)  Subdivision (d) of section 190.2 is the provision defining the felony-murder special circumstance.  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  The new law thus repurposed preexisting law governing the felony-murder special circumstance to define first degree felony murder.  (*Id*. at p. 703.)

Senate Bill 1437 also created a procedural mechanism for those convicted under prior law to seek retroactive relief under the amended law.  (§ 1172.6; *Strong*, *supra*, 13 Cal.5th at p. 708.)  Under section 1172.6, "the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met (*id*., subd. (b)(1)(A)), including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to ... Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437."  (*Strong*, at p. 708, quoting § 1172.6, subd. (a)(3).)  If the court determines that the petitioner has made a prima facie case for relief, then the court must issue an order to show cause and hold an evidentiary hearing.  (§ 1172.6, subds. (c), (d)(1); *Strong*, at pp. 708-709.)  At that hearing, the People bear the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder under the law as amended by Senate Bill 1437.  (§ 1172.6, subd. (d)(3); *Strong*, at p. 709.)

On appeal from an order denying a section 1172.6 petition, we review the court's factual findings for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) We examine the record in the light most favorable to the court's order "'"to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt."'" (*Ibid*.) "'We presume in support of the [order] the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Brown* (2014) 59 Cal.4th 86, 105-106.) If the evidence reasonably supports the court's findings, then we may not reverse the order merely because the evidence might also reasonably support contrary findings. (*Id*. at p. 106.) "'We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.'" (*Ibid*.) "'Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support'" the court's findings. (*Ibid*.)

II.    *Aiding and abetting*

Crenshaw argues that the record does not contain substantial evidence that Crenshaw aided and abetted the underlying kidnapping at all, and there is consequently "no substantial evidence that [Crenshaw] aided and abetted the crime as a major participant." The argument is meritless.

Crenshaw pled guilty to kidnapping for robbery (§ 209) and robbery (§ 211) in December 1983. "'A guilty plea admits every element of the offense charged and is a

conclusive admission of guilt.'" (*People v. Maultsby* (2012) 53 Cal.4th 296, 302.) Senate Bill 1437 did not change the law of robbery or kidnapping for robbery. Crenshaw therefore remains bound by his guilty pleas as to those offenses, and the prosecution did not have to prove him guilty of those offenses again at the evidentiary hearing. Crenshaw "cannot use a section 1172.6 resentencing hearing to relitigate facts already determined, whether by plea, admission, or verdict." (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 458.)

It consequently does not matter whether the record of the evidentiary hearing contains substantial evidence that Crenshaw aided and abetted the kidnapping. His guilty pleas conclusively establish that he is guilty as either a direct perpetrator or an aider and abettor of both the kidnapping and the robbery.

III. *Major participant finding*

Crenshaw also argues that considered in light of the factors identified in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), the record does not contain substantial evidence that he was a major participant in the kidnapping. We disagree.

Our Supreme Court examined the major participation and reckless indifference elements of the felony murder special circumstance in *Banks*, *supra*, 61 Cal.4th at p. 788 and *People v. Clark* (2016) 63 Cal.4th 522. "[W]hen Senate Bill 1437 amended Penal Code section 189 to incorporate major participation and reckless indifference requirements, it codified the understanding of those requirements elucidated in *Banks* and *Clark*." (*Strong*, *supra*, 13 Cal.5th at p. 710.)

10

"*Banks* focused primarily on the major participant element." (*Strong*, *supra*, 13 Cal.5th at p. 706.) A major participant in a robbery is someone whose personal involvement is substantial and "greater than the actions of an ordinary aider and abettor" (*Banks*, *supra*, 61 Cal.4th at p. 802) but who might "not be the ringleader" (*People v. Williams* (2015) 61 Cal.4th 1244, 1281). The *Banks* factors for evaluating "whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major'" include: (1) the participant's role in planning "the criminal enterprise that led to one or more deaths"; (2) the participant's role in "supplying or using lethal weapons"; (3) the participant's awareness of the "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants"; (4) the participant's presence "at the scene of the killing," whether they were "in a position to facilitate or prevent the actual murder," and whether the participant's "own actions or inaction play[ed] a particular role in the death"; and (5) the participant's actions after the use of lethal force. (*Banks*, at p. 803.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

Consideration of all of the *Banks* factors reveals that the trial court's finding that Crenshaw was a major participant in Benham's kidnapping is supported by substantial evidence. As to the first factor, Crenshaw is correct that there is no evidence that he played a role in planning Benham's kidnapping.

11

As to the second factor, there is likewise no evidence that Crenshaw supplied the weapons that were used in the crimes against Benham or the many other crimes that he and Malone committed. However, there is evidence that Crenshaw knew Malone had two firearms, that Crenshaw handled one of them, and that he tried to hide evidence by throwing one of them from the car during the police chase.

As to the third factor, the evidence shows that Crenshaw was well aware of the particular dangers posed by the kidnapping of Benham, the weapons used, and the past experience or conduct of Malone. Crenshaw testified that, before deciding to travel with Malone, Crenshaw knew that Malone had gone to prison for robbing a St. Louis judge. Crenshaw subsequently learned that Malone was armed with two firearms and had killed the cab driver, and Crenshaw was present when Malone killed the man in Missouri. By the time they reached Barstow and abducted Benham, Crenshaw knew that Malone was armed and had already killed more than once.

As to the fourth factor, Crenshaw was present at the scene when Malone kidnapped, raped, and killed Benham, and he did nothing to prevent the murder. Crenshaw testified that when Malone pulled Benham out of the gas station and took her to a shed on a farm, Crenshaw initially sat in the car. But Crenshaw then walked to the shed in time to see Malone sodomize Benham and beat her in the head with a pipe, and Crenshaw did nothing.

As to the fifth factor, Crenshaw's actions after Malone murdered Benham also weigh against him. First, Malone stole another car, and Crenshaw followed behind him

12

in the car from Kansas City until they set it on fire. Next, Crenshaw sat in the car and waited while Malone robbed and killed White. The two men then continued north to San Jose, where Crenshaw tried to conceal evidence by throwing a gun from the window during the police chase that ended with their arrest. And after being taken into custody, Crenshaw lied to law enforcement about his age.

Again, no single factor is necessary, and no single factor is necessarily sufficient. (*Banks*, *supra*, 61 Cal.4th at p. 803.) Given the ample evidence concerning Crenshaw's knowledge of the particular dangers posed by the crime and Malone's history of lethal violence, Crenshaw's presence at the scene of the killing, and Crenshaw's actions after the use of lethal force, the record contains substantial evidence supporting the trial court's finding that Crenshaw was a major participant, notwithstanding the lack of evidence that he planned the crimes or supplied the weapons.[1]

---

[1] In a separate section of Crenshaw's opening brief, he argues that "the evidence was insufficient to prove that [he] aided and abetted the kidnapping to such a degree that he could be considered a major participant." Insofar as he is arguing that he "did not play any role in the kidnapping," the argument is foreclosed by his guilty plea. And insofar as he is arguing that the evidence is insufficient to support the court's finding that he was a major participant, that analysis is controlled by the *Banks* factors, which we have already addressed. (*Banks*, *supra*, 61 Cal.4th at p. 803.)

DISPOSITION

The order denying Crenshaw's petition for resentencing under section 1172.6 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

14